NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 06 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| **WILLIE SAMPSON,** | No. 14-15648 |
| Petitioner - Appellant, | D.C. No. 3:11-cv-00019-LRH-WGC |
| v. | |
| **JACK PALMER; NEVADA ATTORNEY GENERAL,** | MEMORANDUM* |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, Senior District Judge, Presiding

Argued and Submitted August 12, 2015
San Francisco, California

Before:     **KOZINSKI** and **TALLMAN**, Circuit Judges, and **RAYES**,** District
Judge.

Having determined that petitioner's counsel was deficient for failing to

present Dr. Racoma's testimony, the Nevada Supreme Court unreasonably applied

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Douglas L. Rayes, District Judge for the United States
District Court for the District of Arizona, sitting by designation.

Strickland v. Washington, 466 U.S. 668 (1984), in concluding that petitioner wasn't prejudiced by counsel's deficiency.

**1.** The Nevada Supreme Court concluded that there was no reasonable probability that the outcome of the trial would have changed if Dr. Racoma had been permitted to testify. Specifically, the court found that the jury had already heard whether oppositional defiant disorder (ODD) "could have affected [P.T.'s] ability to be truthful." Although the jury heard that ODD can affect a child's truthfulness, the jury did not hear that P.T. had been diagnosed with ODD. Dr. Racoma would have testified about that.

Moreover, the discussion at trial of whether ODD affects truthfulness wasn't clear. During cross examination, petitioner's counsel asked Dr. Vergara, the emergency-room physician who treated P.T., whether her determination of P.T.'s truthfulness might change if she were informed that P.T. suffers from ODD. Dr. Vergara said it wouldn't necessarily change. Almost contemporaneously, however, she testified that ODD affects a child's ability to tell the truth. So at best, the jury heard confusing responses to a hypothetical question posed to a physician who didn't treat patients for behavioral problems. Given the cursory treatment of ODD at trial, the court was unreasonable in determining that Sampson wasn't

prejudiced by his counsel's failure to call Dr. Racoma.

**2.** The Nevada Supreme Court was also unreasonable in overlooking the effect that Dr. Racoma's testimony would have had on the credibility of P.T. and his mother, Veronica. Veronica testified that P.T. suffered from ADHD but omitted any mention of ODD. The jury could have discounted Veronica's testimony after hearing that Dr. Racoma diagnosed P.T. with ODD, a behavioral disorder that increased his propensity to lie. The prosecution's case rested entirely on percipient witness testimony, and Dr. Racoma would have called into doubt the veracity of the two key witnesses.

Additionally, the court discounted Dr. Racoma's testimony because he "could not tell if [P.T.] was untruthful regarding his testimony in this case." But under Nevada law, Dr. Racoma wouldn't have been able to opine on P.T.'s veracity. Lickey v. State, 827 P.2d 824, 826–27 (Nev. 1992); Townsend v. State, 734 P.2d 705, 709 (Nev. 1987) (as changed).

**3.** Finally, the court overemphasized the probative value of the so-called "corroborating" evidence in establishing P.T.'s credibility. The evidence confirmed that P.T. was truthful insofar as he testified that he was at petitioner's home. But that was never disputed. None of the evidence—sundry items like stray

fast-food wrappers, furniture and items of clothing in petitioner's house—indicated that petitioner sexually assaulted P.T.  The Nevada Supreme Court was unreasonable to the extent it found P.T.'s testimony about undisputed facts to bolster his credibility and minimize the effect that Dr. Racoma's testimony would have had on the outcome of the trial.

**4.**  There is a reasonable probability that the jury would have acquitted had it heard from Dr. Racoma.  Combined with the Nevada Supreme Court's earlier finding that petitioner's counsel rendered deficient performance, this establishes that petitioner received constitutionally ineffective assistance of counsel.

**REVERSED** and **REMANDED,** with instructions that the district court **GRANT** a conditional writ of habeas corpus.

Sampson v. Palmer, No. 14-15648

TALLMAN, Circuit Judge, dissenting:

We stumble over the same stone yet again.  In reversing the Nevada Supreme Court's denial of habeas relief following a two-day evidentiary hearing, our court ignores the deferential provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended at 28 U.S.C. § 2241 *et seq.*).  Because the majority impermissibly substitutes its own opinion for the Nevada Supreme Court's finding of no prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), I respectfully dissent.

The issue before us is straightforward: Whether the Nevada Supreme Court rendered a decision that was contrary to, or involved an unreasonable application of, the *Strickland* standard.  *See* 28 U.S.C. § 2254(d)(1).  Under the oft-cited *Strickland* test, a petitioner is required to show (1) trial counsel's performance was deficient, and (2) that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.  I agree with my colleagues' finding with respect to the first prong—that the Nevada Supreme Court reasonably found Sampson's trial counsel deficient.  However, I part ways with the majority's conclusion on the latter prong—that the state court was wrong and objectively unreasonable in ruling that the facts determined at the evidentiary hearing did not show prejudice.

1

Prejudice is proven when there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. AEDPA makes this standard even more difficult to satisfy: "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)) (emphasis in original).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). That standard is met here where multiple state court judges, a United States district judge, and one member of this panel disagree with my two colleagues in the majority. The Supreme Court has repeatedly cautioned us:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel

2

satisfied *Strickland*'s deferential standard.

*Id.* at 105 (internal citations omitted); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011).

Here, the Nevada Supreme Court did exactly what it was supposed to do. After the jury verdict and his direct appeal, Sampson asserted this ineffective assistance claim in his post-conviction state habeas petition. Without holding an evidentiary hearing, the state district court denied Sampson's petition. On appeal, the Nevada Supreme Court initially reversed and remanded to the state district court for an evidentiary hearing to determine whether trial counsel's failure to include Dr. Racoma's expert testimony on the victim's diagnosed oppositional defiant disorder (ODD) prejudiced Sampson's defense. On remand, Sampson's counsel had Dr. Racoma testify at length during the evidentiary hearing. After fully considering Dr. Racoma's testimony, the state district court denied Sampson's petition. The Nevada Supreme Court affirmed.

In affirming the district court, the Nevada Supreme Court concluded that while Dr. Racoma testified that patients diagnosed with ODD had a tendency to lie more often to authority figures when the patient was in trouble, he also testified that he was unaware of anyone with ODD ever fabricating a story about sexual abuse. *Sampson v. State*, No. 54135, 2010 WL 5238653, at *1 (Nev. Dec. 10,

3

2010).  The Nevada Supreme Court also held that "the victim's testimony at trial was corroborated by evidence found in appellant's home." *Id.*  Contrary to the majority's characterization, the corroborating evidence found in Sampson's home was overwhelming: P.T.'s shopping list and the McDonald's cup in the kitchen confirming the food supplied by Sampson, the chair with yellow ropes used to bind the victim, the lotion in Sampson's bedroom applied to the victim's body, the white handkerchief used as a blindfold, and the revolver and its sheath confirming the victim's accurate description of Sampson's gun and holster.

The majority contends that none of this evidence indicates that petitioner sexually assaulted P.T., only that P.T. was at the house.  But the victim's version of what happened once at the house is not difficult to believe given all of the corroborating evidence that police recovered from Sampson's house, coupled with Sampson's admission to key non-sexual portions dovetailing with the victim's narrative.  In particular, it is undisputed that 56-year-old Sampson picked up a complete stranger, the 12-year-old victim, by enticing him into his car with an offer of food from a nearby McDonald's Restaurant; took him home to consume the fast food rather than eating it there; once inside, encouraged the victim to disrobe and take a shower; then removed all of his clothing because it was dirty; and provided the boy with only a pair of men's nylon shorts to wear.

4

The majority also maintains that the Nevada Supreme Court was "unreasonable in overlooking the effect that Dr. Racoma's testimony would have had on the credibility of P.T. and his mother, Veronica." Maj. at 3. On the contrary, the Nevada Supreme Court considered and rejected Sampson's argument that Dr. Racoma's testimony could have refuted P.T.'s mother's statement that the victim had only been diagnosed with ADHD. *Sampson*, 2010 WL 5238653, at *1. The Court held that because P.T.'s mother did not discuss his diagnoses in detail, petitioner had failed to demonstrate a reasonable probability of a different outcome.[1] *Id.*

---

[1] Defense counsel's cross-examination of the victim's mother at trial:

Q:  At the time that this occurred, was [P.T.] taking any medication?
A:  Uh—yeah.
Q:  What medication was he taking?
A:  Adderall.
Q:  And were you informed by any doctors what that medication was for?
A:  It's to stop him from being so hyper.
Q:  Was it to stop him from being anything else?
A:  What you mean?
Q:  Let me rephrase the question. What was the diagnosis, if you recall?
A:  Anxiety like. To slow him down like when he's at school so he won't be so hypered up [sic].
Q:  Was it designed only for school?
A:  Yeah. That's all.
Q:  Did the doctors ever give you any other diagnosis? . . .
A:  Adderall.
Q:  No, no—not for the medication, but for the diagnosis.
A:  No.
Q:  They never told you exactly—

5

Further, Dr. Racoma's testimony was hardly unequivocal. The majority puts much stock in the fact that the ODD discussion at trial "wasn't clear." But Dr. Racoma's testimony probably would not have increased clarity for the jurors. During the evidentiary hearing, Dr. Racoma stated that he diagnosed P.T. with ODD and ADHD after the first hour-long consultation, and then agreed that other clinicians may disagree with his ODD diagnosis, testifying that "it happens a lot." On cross-examination at the evidentiary hearing, Dr. Racoma admitted that his clinical opinion about ODD patients having a tendency to lie was not necessarily shared by all clinicians:

> Q: Now, Doctor, are you familiar with the Mayo Clinic?
> A: Yes.
> Q: And would you say they're a reputable clinic that has done research on ODD?
> A: Yes.
> Q: Okay. Would you be surprised if they don't specifically list lying or untruthfulness as one of the symptoms of ODD?
> A: I don't think that's—that's been mention [sic]. I think—I mean, when you say ODD it's usually it's a behavior of being defiant instructions [sic], or rules.
> Q: Okay.

---

A: E-D—
Q: —what the medication is for?
A: Attention deficit or something like that, what is that called?
Q: ADHD?
A: Yeah.
Q: Did they say anything else?
A: No.

6

A: That is a major criteria for ODD.
Q: Okay. So you are distinguishing defiance and lying, they're two different things, correct?
A: Exactly.

Dr. Racoma even testified that the fact that P.T. may have provided some inconsistent details of what happened on the day of the assault could "mostly" be attributed to P.T.'s problem with focusing and concentrating when not on medication. Additionally, Dr. Racoma testified that he had never observed P.T. be untruthful and the purpose of P.T.'s visits to the doctor had nothing to do with his ability to tell the truth. Thus, Sampson has failed to show that the Nevada Supreme Court's ruling—that Dr. Racoma's testimony would not have changed the jury's verdict—was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).[2]

"The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings

---

[2] Nor has Sampson shown that the denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). The Nevada district courts' fact finding procedure in this case was textbook. The petitioner, in any event, has not alleged a violation of § 2254(d)(2), raising only an intrinsic challenge to the facts as found by the state court. As such, the "state court's findings are dressed in a presumption of correctness," which cannot be overcome except by "clear and convincing evidence." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); 28 U.S.C. § 2254(e)(1). Sampson has not met this burden.

7

and to substitute its own opinions for the determination made . . . by the [state court]." *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal quotation marks and citations omitted). Here, the Nevada Supreme Court did not brush aside Sampson's ineffectiveness claim—it remanded for a full evidentiary hearing, considered Dr. Racoma's testimony, which was not unequivocally favorable, and then found no prejudice in light of the totality of the evidence. How can we conclude there was an "extreme malfunction" in Nevada's criminal justice system? *Id.* Simply disagreeing with the state court's assessment of the facts is not sufficient to order relief.

We've been down this path before. And the Supreme Court has reminded us—and reversed us—time and again for our failure to heed AEDPA's limitations. *See, e.g.*, *Ayala v. Wong*, 756 F.3d 656 (9th Cir. 2013), *rev'd sub nom. Davis v. Ayala*, 135 S. Ct. 2187 (2015); *Frost v. Van Boening*, 757 F.3d 910 (9th Cir.), *rev'd sub nom. Glebe v. Frost*, 135 S. Ct. 429 (2014); *Smith v. Lopez*, 731 F.3d 859 (9th Cir. 2013), *rev'd*, 135 S. Ct. 1 (2014); *Sessoms v. Runnels*, 691 F.3d 1054 (9th Cir. 2012), *rev'd sub nom. Grounds v. Sessoms*, 133 S. Ct. 2886 (2013). Once again, I respectfully dissent.